**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. No. 1:15-cv-00646 (CKK) |
| U.S. DEPARTMENT OF STATE, | ) | |
| Defendant | ) | |

**DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendant, the Department of State, respectfully moves for summary judgment on the claims of Plaintiff Judicial Watch, arising under the Freedom of Information Act ("FOIA")[1]. As demonstrated in the accompanying Memorandum and supporting declarations and exhibits, the Department of State has fully satisfied all of its obligations under the statute and is thus entitled to summary judgment. A Statement of Material Facts as to Which There Is No Genuine Issue and a proposed order are also attached.

Dated: October 21, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/ Marsha Stelson Edney
MARSHA STELSON EDNEY(DC Bar #414271)

[1] Defendant previously moved for summary judgment in July, 2016. However, in August, the Court granted the parties joint motion to stay the briefing schedule, and denied without prejudice the pending summary judgment motion, to allow State to search documents from the FBI. *See* Minute Orders dated August 8, 2016. This renewed motion addresses those new searches.

Senior Trial Counsel
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave N.W.
Washington DC 20530
Tel: (202) 514-4520
Email: marsha.edney@usdoj.gov
*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. No. 1:15-cv-00646 (CKK) |
| U.S. DEPARTMENT OF STATE, | ) | |
| Defendant | ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Plaintiff Judicial Watch, Inc. ("Plaintiff" or "Judicial Watch") submitted a request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), to Defendant United States Department of State ("State") for (1) any and all records of requests by former Secretary of State Hillary Rodham Clinton or her staff to the State Department Office of Secretary Technology seeking approval for the use of an iPad or iPhone for official government business; and (2) any and all communications within or between the Office of Secretary of State, the Executive Secretariat, and the Office of the Secretary and the Office of Secretary Technology concerning, regarding, or related to the use of unauthorized electronic devices for official government business between January 1, 2009 and January 31, 2013.

As the accompanying declaration by Eric F. Stein, Acting Co-Director of the Office of Information Programs and Services ("IPS") at State demonstrates, in its response to Plaintiff's request, State conducted a search reasonably calculated to locate all records in its possession responsive to that request. *See* Exhibit A, Declaration of Eric F. Stein ("Stein Decl."). Of the 42

responsive records found pursuant to this search, State withheld in full 7 documents and released portions of 35 documents. *Id.* at ¶42. Further, as the accompanying index incorporated into the Stein Declaration explains, State has withheld only such information falling within specific FOIA exemptions. *See* Stein Decl., Exhibit 1 ("Index"). Moreover, State also voluntarily searched the documents transferred from the FBI to State for records responsive to Plaintiff's FOIA request, notwithstanding that they were not in State's possession and control at the time the FOIA request was made. *See* Exhibit B, Second Declaration of Eric F. Stein ("Second Stein Decl.") ¶ 3. No responsive records were found. *Id*. at ¶ 5. State has now disclosed all reasonably segregable non-exempt material to Plaintiff and accordingly, Defendant is entitled to summary judgment in this case.

**STANDARD OF REVIEW**

A district court's subject matter jurisdiction under the FOIA is dependent upon a showing that a federal agency has (1) improperly (2) withheld (3) agency records. 5 U.S.C. § 552(a)(4)(B) (providing jurisdiction to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld"). Judicial authority under the FOIA can only be invoked if the agency "has contravened all three components of this obligation." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980); *McGehee v. CIA*, 697 F.2d 1095, 1105 (D.C. Cir. 1983) (citing same).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); *see also Paxson v. DOJ,* 41 F. Supp. 3d 55, 58 (D.D.C. 2014). An agency can satisfy its burden by submitting a declaration that adequately describes the search for potentially responsive records, identifies any material that is being withheld, and provides the grounds for non-disclosure. *See*

*DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 753 (1989); *Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). "Agency declarations are entitled to a presumption of good faith." *Espinoza v. DOJ*, 20 F. Supp. 3d 232, 239 (D.D.C. 2014) (citing *Long v. DOJ*, 450 F. Supp. 2d 42, 54 (D.D.C. 2006)). Absent countervailing evidence, summary judgment should be granted to the agency if its declarations are clear, specific, and reasonably detailed, and if they describe the withheld information in a factual and nonconclusory manner. *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984).

## ARGUMENT

## I. STATE CONDUCTED ADEQUATE SEARCHES FOR RESPONSIVE RECORDS

### A. <u>The Standards for an Adequate Search</u>

Where the requester challenges the adequacy of an agency's search for responsive records, the agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). In determining the adequacy of a FOIA search, the Court's guiding principle is reasonableness, not perfection. *Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998); *Riccardi v. DOJ*, 32 F. Supp. 3d 59, 63 (D.D.C. 2014). The agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. *Oglesby*, 920 F.2d at 68; *W. Ctr. for Journalism v. IRS*, 116 F. Supp. 2d 1, 9 (D.D.C. 2000), *aff'd* 22 F. App'x 14 (D.C. Cir. 2001).

The issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for responsive documents is adequate. *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). Whether a search is adequate "is

determined by methods, not results." *Nance v. FBI*, 845 F. Supp. 2d 197, 201 (D.D.C. 2012); *see also Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (the adequacy of a FOIA search "is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search"). The agency need not demonstrate that no other relevant documents could possibly exist. *See Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982). Indeed, "[i]t would be unreasonable to expect even the most **e**xhaustive search to uncover *every* responsive file." *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986).

To establish the sufficiency of its search, the agency's affidavits need only explain the "scope and method of the search" in "reasonable detail." *Perry v. Block*, 684 F.2d at 127; *see also Kidd v. DOJ*, 362 F. Supp. 2d 291, 295 (D.D.C. 2005). Although the declaration should be "sufficiently detailed," the standard "is not 'meticulous documentation [of] the details of an epic search.'" *Texas Indep. Producers Legal Action Ass'n v. IRS*, 605 F. Supp. 538, 547 (D.D.C. 1984) (quoting *Perry v. Block*, 684 F.2d at 127), *aff'd in part*, *rev'd in part*, 802 F.2d 1483 (D.C. Cir. 1986). Conducting a reasonable search is a process that requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and is "hardly an area in which the courts should attempt to micro-manage the executive branch." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002). In evaluating the adequacy of a search, courts accord agency affidavits "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).

B. <u>State Has Met Its Obligations Under FOIA to Conduct a Reasonable Search</u>

As set out in detail in the Stein Declaration and the Second Stein Declaration, State's search was reasonably calculated to uncover documents responsive to Plaintiff's request and thus

satisfies the adequacy requirement. Based on its knowledge of the subjects at issue in Plaintiff's request, State directed its search efforts to the offices and records systems it determined were reasonably likely to contain responsive records. Stein Decl. ¶ 16. Specifically, IPS determined that the Offices of the Executive Secretariat ("S/ES") and the Bureau of Diplomatic Security ("DS") records systems were reasonably likely to have documents responsive to Plaintiff's request. *Id*. Additionally, State searched the files of three former employees, including the former Secretary of State, who provided State with records. *Id*. ¶¶ 19, 27. Finally, State voluntarily agreed to search documents transferred from the FBI to State for records responsive to Plaintiff's FOIA request, notwithstanding that they were not in State's possession and control at the time the FOIA request was made. Second Stein Decl. ¶ 3. As described further below, State applied appropriate search terms to the relevant records and record systems it searched. Stein Decl. ¶¶ 14-28; Second Stein Decl. ¶ 5.

1. Searches of the Office of the Executive Secretariat

The Office of the Executive Secretariat Staff ("S/ES-S") is responsible for coordination of the work of the Department internally, serving as the liaison between the Department's bureaus and the offices of the Secretary, the Deputy Secretaries, and the Under Secretaries. Stein Decl. ¶ 18. It is generally responsible for coordinating search responses for the Office of the Secretary of State ("S"), the Office of the Deputy Secretary of State ("D"), the Office of the Deputy Secretary of State for Management and Resources ("D-MR"), the Office of the Under Secretary for Political Affairs ("P"), the Office of Policy Planning ("S/P"), and the Counselor of the Department ("C"). *Id*.

A Management Analyst who was knowledgeable of both the request and S/ES-S records systems conducted a search of S/ES-S electronic records systems reasonably likely to contain

responsive records. *Id*. ¶19. These searches encompassed the date range January 1, 2009 through January 31, 2013. These systems include the Secretariat Tracking and Retrieval System ("STARS")[1] and Everest.[2] These systems' search capabilities are wildcard-based, meaning that common variations of the keywords being searched would be retrieved (e.g., a search for "directive" would produce "directive's"). *Id*. The S/ES-S staff also searched Top Secret files, the records provided to State by former Secretary Hillary Clinton,[3] and the state.gov email records of Huma Abedin and Cheryl Mills.[4] *Id*. The S/ES Office of Information Resource Management ("S/ES-IRM") also conducted a search of the email accounts of the S/ES-IRM Office Director, the S/ES-IRM Customer Relations Manager, and the S/ES-IRM Manager for Special Projects, as

---

[1] STARS is an automated system used to track, control, and record documents containing substantive foreign policy information passing to, from, and through the offices of the Secretary of State, the Deputy Secretary of State, and other Department principal officers. Original documents are indexed, scanned, and stored as images in STARS. Information in STARS covers the period 1988 through 2014. For searches of STARS, the search terms are applied to a descriptive abstract attached to each document. Each abstract is created by a Technical Information Specialist when the document is added to the database; this abstract is designed to capture the subject matter of the related document. The abstracts are the only portion of STARS database whose text can be searched.

[2]Everest is a Microsoft SharePoint based enterprise system used to task, track, control and archive documents containing substantive foreign policy information passing to, from, and through the offices of the Secretary of State, the Deputy Secretaries of State and other Department principal officers. The documents in Everest are full-text searchable. Everest includes all information found in STARS for the period 1988-2014, and information not in STARS for the period 2015 to the present.

[3] On December 5, 2014, former Secretary Clinton provided State with emails in response to a request from State that, if former Secretaries or their representatives were "aware or [were to] become aware in the future of a federal record, such as an email sent or received on a personal email account while serving as Secretary of State, that a copy of this record be made available to State." The number of pages provided by former Secretary Clinton was originally estimated as approximately 55,000. However, once the digitizing process was complete, State was able to provide a more precise count. Former Secretary Clinton provided 53,988 pages, of which approximately 1,533 were identified, in consultation with the National Archives and Records Administration, as entirely personal correspondence, that is, documents that are not federal records, leaving approximately 52,455 pages.

[4] *See infra* subsection 4 regarding the searches of the non-state.gov documents provided by Ms. Abedin and Ms. Mills.

well as the S/ES-IRM shared drives. *Id*. All of these electronic records systems were searched using the following terms: "iPhone" or "iPad" or "PED" or "PDA" or "Blackberry" or "Blackberries" or "Blackberies" or "BB" or "approval" or "unauthorized" or "electronic devices." *Id*.

To ensure the adequacy of the search, S/ES-S conducted a supplemental search of all of the records systems listed above plus the email accounts of John Bass, Stephen Mull, Dan Smith, and the S/ES-IRM Help Desk email collective. Stein Decl. ¶ 20. All of these records systems were searched using the following search terms or combination of search terms: "iPhone" or "iPad" or "PED" or "PDA" or "Blackber?"[5] or "Blackberr? AND Approv?" or "Blackberr? AND Unauthoriz?" or "Electronic AND Device?" or "Blackberr? AND Question" or "COMS" or "FOIA" or "Freedom of Information Act." *Id*. No responsive records were located as a result of either the original or the supplemental searches. *Id.* ¶ 21.

2. S/ES Retired Electronic Files

An IPS Government Information Specialist, with knowledge of both the request and the relevant records systems, conducted a search of the electronic records retired by the Office of the Executive Secretariat, which consist of shared electronic office folders that were available to employees within the Office of the Secretary during former Secretary Clinton's tenure ("shared office folders"), as well as individual electronic folders of files belonging to Cheryl Mills and Huma Abedin ("individual folders"). Stein Decl. ¶ 22. The analyst conducted a full-text search of these electronic records using the following terms or combination of terms: "iPhone" or "iPad" or "PED" or "PDA" or "Blackber?" or "Blackberr? AND Approv?" or "Blackberr? AND

[5] The question mark ("?") is a wildcard character. A search for the term "Blackberr?" would retrieve both "Blackberry" and "Blackberries."

Unauthoriz?" or "Electronic AND Device?" or "Blackberr? AND Question" or "COMS" or "FOIA" or "Freedom of Information Act." *Id*. These searches encompassed the date range January 1, 2009 through January 31, 2013. The Department located no responsive records as a result of these searches. *Id.*

3. The Bureau of Diplomatic Security

The Bureau of Diplomatic Security ("DS") is responsible for providing a safe and secure environment for the conduct of U.S. foreign policy. Stein Decl. ¶ 23. Every U.S. diplomatic mission operates under a security program designed and maintained by DS. DS's Freedom of Information and Privacy Act Office ("DS/MGT/FOIA-PA") reviews incoming FOIA requests, determines which DS components are reasonably likely to have responsive records, and then tasks those components with performing searches. Upon review of the subject FOIA request, a DS/MGT/FOIA-PA analyst determined that the DS components reasonably likely to maintain responsive records were the Security Infrastructure Directorate ("DS/SI") and the Countermeasures Directorate ("DS/C"). *Id*.

DS/SI serves as the backbone of security to support the current and emerging needs of the Department of State as it pursues diplomacy for 21st Century Statecraft. DS/SI is comprised of the following offices: the Office Cybersecurity, the Office of Information Security, the Office of Personnel Security and Suitability, and the Insider Threat Program. Stein Decl. ¶ 24. The DS/SI Senior Coordinator searched his electronic files, including his classified and unclassified email records, Word documents, spreadsheets, and PowerPoint presentations using the search terms "iPhone" or "iPad" or "TipSpiral" or "Clinton" or "Mills" or "Abedin" or "Boswell" for the time period January 1, 2009 through January 31, 2013. *Id*.

DS/C manages the development and implementation of all physical and technical countermeasures security standards and policies that apply to U. S. Department of State facilities domestically and overseas; securely transports classified diplomatic materials across international borders; and provides defensive equipment to protect the lives of U.S. government personnel, classified information, and property. *Id*. ¶ 25. DS/C is comprised of the following offices: the Office of Security Technology, the Office of Physical Security Programs, and the Office of Diplomatic Courier Service. DS/C searched its electronic shared drive and classified and unclassified email records using the search term "unauthorized electronic devices" or "Clinton" or "Mills" or "Abedin" for the time period January 2009 through December 2013. *Id*.

As a result of these searches, DS located 41 responsive records. Stein Decl. ¶ 26

4. Records Provided to State from Former Officials

An IPS analyst who was knowledgeable of both the request and the relevant records systems conducted a search of the records provided to the Department by Huma Abedin[6] and Cheryl Mills,[7] using the terms or combination of terms: "iPhone" or "iPad" or "PED" or "PDA"

---

[6] In response to a letter requesting that Ms. Abedin provide to State any federal records in her possession concerning official government business sent or received on a personal email account while serving in her official capacity with State, Ms. Abedin made three separate submissions of documents; the last submission arrived on September 1, 2015. Ms. Abedin provided the following types of documents: (1) three PDFs containing emails, memos, daily schedules, call lists, notes, and other types of documents, and (2) 6,714 individual PDFs, each containing one email of varying lengths. State received approximately 29,000 pages of documents from Ms. Abedin.

[7] In response to a letter requesting that Ms. Mills provide to State any federal records in her possession concerning official government business sent or received on a personal email account while serving in her official capacity with State, Ms. Mills made three separate submissions of documents to State; the last submission arrived on August 12, 2015. Ms. Mills provided the following types of documents: (1) approximately 675 emails of varying lengths; (2) approximately 1,370 electronic documents of various other types, such as word and PowerPoint files; and (3) one cubic foot box of paper documents, consisting of 1,865 pages, which have been scanned into PDF files. Using estimates of 3 pages per email and 5 pages per other type of document, State received a total of approximately 10,740 pages of documents from Ms. Mills.

or “Blackber?” or “Blackberr? AND Approv?” or “Blackberr? AND Unauthoriz?” or “Electronic AND Device?” or “Blackberr? AND Question” or “COMS” or “FOIA” or “Freedom of Information Act.” *Id.* ¶ 27. These searches encompassed the date range January 1, 2009 through January 31, 2013. *Id.* As a result of these searches, the Department located one (1) responsive record. *Id.* ¶ 28.

5. Documents provided to State from the FBI

On July 8, 2016, State sent a letter to Director James B. Comey asking the Federal Bureau of Investigation (“FBI”) to provide to State any additional work-related emails of former Secretary Clinton that the FBI had retrieved during the course of its investigation. Second Stein Decl. ¶ 3. On July 12, 2016, the FBI sent a letter to State indicating that the FBI would be providing to State certain information that may include agency records of the Department. *Id.* The letter stated that the FBI would be providing this information to State “for review and determination of record status pursuant to the Federal Records Act and subsequent FOIA processing as appropriate.” *Id.* The FBI completed the transfer of information to State on August 5, 2016. *Id.* In the interest of reducing the issues to be litigated, State agreed to conduct searches of the information being transferred from the FBI to State for records responsive to Plaintiff’s FOIA request, notwithstanding that they were not in State’s possession and control at the time the FOIA request was made. *Id.*

An IPS Government Information Specialist, with knowledge of the request, conducted an electronic search of the uploaded material transferred from the FBI to State.[8] Second Stein Decl.

[8] One disc of material had not been uploaded at the time the Department conducted its electronic search. This disc, which the Department understood to contain the collection of documents previously returned to the Department by former Secretary Clinton in December 2014, was determined not to be reasonably likely to contain responsive records as that collection had already been reviewed by the Department and

¶ 4. The IPS Specialist conducted 32 individual searches using the following combinations of search terms: (1) <iPad OR iPhone> AND <security OR DS>; (2) <security OR DS> AND <PED OR PDA OR Blackberr* OR “electronic device”>; (3) <Secretary OR S/ES OR ExecSec OR SecState OR “Executive Secretariat”> AND <PED or PDA OR Blackberr* OR “electronic device”>. *Id*. ¶ 4 (specifying each of the 32 individual searches). Some of terms contained an asterisk (*) which is a wildcard character so that a search for Blackberr* would retrieve both “Blackberry” or “Blackberries.” *Id*. n. 2. The IPS Specialist manually reviewed any document identified by this electronic search because at least one combination of search terms was present somewhere on the document. *Id.* Based upon that review, State located no responsive records. *Id.* The search terms used in the supplemental search of the FBI documents differ from the search terms used in the initial search of agency records, in that they were more tailored to locate responsive records. *Id*. ¶ 5. The initial search terms were overbroad, resulting in the retrieval of a large number of potentially responsive documents that, once reviewed, yielded significantly fewer actual responsive documents. *Id.* The modified search terms are reasonably calculated to locate all records responsive to Plaintiff’s request. *Id.*

In sum, State searched two distinct offices and their record systems, materials provided from certain non-state.gov email accounts, as well as documents provided to State from the FBI, for records responsive to Plaintiff’s request, utilizing search terms reasonably calculated to

---

posted on its FOIA website. The Department is currently working to verify that all of the documents on this disc are in fact duplicative of those previously reviewed by State and searched for records responsive to this case. In an abundance of caution, however, the Department conducted a manual review of the documents remaining to be verified and determined that none were responsive to this request. Second Stein Decl. ¶ 4 n. 1.

uncover all relevant documents. Thus, the agency performed an adequate search for responsive records.

## II. STATE PROPERLY WITHHELD MATERIALS EXEMPT FROM PRODUCTION

An agency that withholds material pursuant to a FOIA exemption bears the burden of showing the applicability of claimed exemptions, *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011), and must submit an index of all materials withheld. *Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973). FOIA "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003) (citation omitted). In enacting FOIA, Congress recognized "that legitimate governmental and private interests could be harmed by [the] release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). Thus, although FOIA generally promotes disclosure, it recognizes "that public disclosure is not always in the public interest." *Baldrige v. Shapiro*, 455 U.S. 345, 352 (1982). As the Supreme Court has stressed, the statutory exemptions must be construed "to have meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). "'Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible.'" *Pinson*, __ F. Supp. 3d __, 2016 WL 614364, at *5 (quoting *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007)).

Here, as the Stein Declaration demonstrates, State appropriately withheld information and documents in accordance with FOIA exemptions 5, 6, and 7.[9]

A. State properly invoked FOIA exemption 5

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Records are exempt from disclosure if they would be "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 149 (1975). Exemption 5 thus incorporates the privileges that are available to an agency in civil litigation, including the deliberative process privilege. *Id*. at 148-50; *Rockwell Int'l. Corp. v. Dep't of Justice,* 235 F.3d 598, 601 (D.C. Cir. 2001). The deliberative process privilege protects intra- or inter-agency documents that are "'predecisional' and 'deliberative'," by shielding from disclosure "'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008) (*quoting Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8 (2001)). "In deciding whether a document should be protected by the privilege, [courts] look to whether the document is 'predecisional'," i.e., "whether it was generated before the adoption of an agency policy," and "whether the document is deliberative," i.e., "whether it reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980). "Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate

---

[9] Additionally, information was also withheld or redacted under FOIA exemptions 1 and 3 but plaintiff informed State by email dated June 30, 2016 that it will not challenge those withholdings and thus, while they are noted on the Index, they are not discussed.

memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process." *Sears*, 421 U.S. at 151 n.18.

"Exemption 5 was intended to protect not simply deliberative *material*, but also the deliberative *process* of agencies." *Judicial Watch, Inc. v. Dep't of Treasury*, 802 F. Supp. 2d 185, 198 (D.D.C. 2011) (emphasis added) (*quoting Montrose Chem. Corp. of California v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974)). Thus, even factual material is exempt under Exemption 5 if "disclosure would 'expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Id.* (*quoting Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990)). "There should be considerable deference to the [agency's] judgment as to what constitutes . . . part of the agency give-and-take — of the deliberative process — by which the decision itself is made" because the agency is best situated "to know what confidentiality is needed to prevent injury to the quality of agency decisions." *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (internal quotations and citations omitted).

Here, State properly withheld information under Exemption 5 that is protected by the deliberative process privilege because the information withheld reflects the internal exchange of ideas and recommendations when Department officials are formulating a strategy for official action, such as determining whether to permit the use of electronic devices in the Office of the Secretary of State. Stein Decl. ¶ 30. Disclosure of such information, which is pre-decisional and deliberative, and contains selected factual material intertwined with opinion, would inhibit candid internal discussions and the expression of recommendations and judgments regarding current issues and preferred courses of action by Department personnel. *Id*. Disclosure of the

details of internal discussions held in the course of formulating such a policy could reasonably be expected to chill the open and frank exchange of comments and opinions that occurs between Department officials at these critical times. *Id; see, e.g.*, C05838711, C05838712 (interagency email exchanges regarding use of personal digital assistants in S front office, including back and forth discussions about proposed actions); C05891136, C05891138, C05891139, C05838718, C05891125 (intra-agency email exchanges discussing drafting of memorandum regarding options for use of blackberries in S); C05891089, C05838732, C05838733( intra-agency email exchanges discussing technology and security issues involved with allowing use of electronic devices in S front office including ongoing discussions about these topics with the former Secretary's staff and proposed next steps). In certain instances, the Department has also withheld the identity of individuals or authorities within the Executive Branch, authorities with whom Department officials sought to consult, as the deliberations and decisions about with whom to consult reveals information about the content of the deliberations themselves. Stein Decl. ¶ 30*;* *see* C05838711; C05891096.

B. State properly invoked FOIA exemption 6

Exemption 6 provides that information about individuals in "personnel and medical files and similar files" may be withheld when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has adopted a broad construction of the privacy interests protected by Exemption 6, *see Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-69 (1989), and privacy is of particular importance in the FOIA context because disclosure under FOIA is tantamount to disclosure to the public at large. *See Painting & Drywall Work Pres. Fund, Inc. v. HUD*, 936 F.2d 1300, 1302 (D.C. Cir. 1991). Where "individuals have a privacy interest in avoiding the

harassment that could ensue following the disclosure of their personal information," withholdings are warranted under Exemption 6 absent some "countervailing public interest that disclosure is likely to advance." *Island Film, S.A., v. Dep't of Treasury*, 869 F. Supp. 2d 123, 136 (D.D.C. 2012).

Exemption 6 requires an agency to balance an individual's right to privacy against the public's interest in disclosure. *See Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). The agency must determine whether disclosure of the information would threaten a protectable privacy interest; if so, the agency must weigh that privacy interest against the public interest in disclosure, if any. *See Island Film*, 869 F. Supp. 2d at 136; *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991). The "only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of FOIA,' which is contribut[ing] significantly to public understanding of the *operations or activities of the government*.'" *Dep't of Defense v. FLRA*, 510 U.S. 487, 495 (1994) (*quoting Reporters Comm*., 489 U.S. at 775); *See also Rollins v. U.S. Dep't. of State*, 70 F. Supp. 3d 546, 553-54 (D.D.C. 2014). The requester bears the burden of demonstrating that the release of the withheld information would serve this interest. *See Smith v. Dep't of Labor*, 798 F.Supp.2d 274, 285 (D.D.C. 2011) (*citing Carter v. Dep't of Commerce*, 830 F.2d 388, 391–92 & n.8 & n. 13 (D.C. Cir. 1987)).

Here, after conducting the requisite balancing, State withheld the names and email addresses of DS personnel and the name of one other State employee contained in 38 DS records under Exemption 6. Stein Decl. ¶¶ 32-33, 35. This information regarding the DS personnel was withheld because they were, and possibly are, in positions of access to information regarding official law enforcement investigations, and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released. *Id*. ¶¶ 32, 35;

*see* Index Doc Nos. C05891079, C05891070, C05838711, C05838712. The Department also withheld the name of an employee of the Bureau of Intelligence and Research ("INR"). Stein Decl. ¶¶ 32, 35; *see* Index Doc Nos. C05891079, C05891070, C05838719, C005838720, C0591121, C0591119. The INR bureau's primary mission is to harness intelligence to serve U.S. diplomacy. Thus, INR employees have access to intelligence material, and the sensitivity of their work may subject them to harassment should their identities be revealed. Stein Decl. ¶ 32. State has determined that there is no public interest in the disclosure of any of these individuals' names and/or email addresses because release of this information could result in unsolicited attention and harassing inquiries and would shed no light on the Department's operations and activities. Accordingly, in each instance, the privacy interests clearly outweigh any public interest in disclosure of such personal information and must, therefore, prevail. Because release of this information would constitute a clearly unwarranted invasion of personal privacy; it is therefore exempt from release under FOIA Exemption 6, 5 U.S.C. § 552(b)(6). *Id.* ¶ 35.

C. <u>State properly invoked FOIA exemption 7</u>

State has withheld information under two subsections of Exemption 7, which protects certain categories of "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). A two-part inquiry is applied to withholdings under Exemption 7, beginning with a determination of whether "a requested document [is] shown to have been an investigatory record compiled for law enforcement purposes." *F.B.I. v. Abramson*, 456 U.S. 615, 622 (1982) (internal quotation marks omitted). Following amendments to FOIA in 1986, this prong has been expanded to include materials that "have not been compiled in the course of a specific investigation" and includes all records "compiled for law enforcement purposes." *Am. Civil Liberties Union of S. Cal. v. U.S. Citizenship and Immigration Servs.*, 133 F. Supp. 3d 234, 242-

243 (D.D.C. 2015); *see also Tax Analysts v. I.R.S.*, 294 F.3d 71, 79 (D.C. Cir. 2002). If this threshold criterion is satisfied, records may be withheld if they fall into one of six defined categories. This standard can be met by either criminal law enforcement agencies or agencies with both law enforcement and administrative functions. *See, e.g.*, *Suzhou Yuanda Enter. Co. v. Customs and Border Protection*, 404 F. Supp. 2d 9, 14 (D.D.C. 2005) (Customs is a law enforcement agency charged with enforcing federal law regarding the proper entry of merchandise into the United States); *Phila. Newspapers, Inc. v. Dep't of Health and Human Services*, 69 F. Supp. 2d 63, 67 (D.D.C. 1999) (finding Exemption 7 was properly used to withhold records compiled through an audit by HHS). Although in either case, "[i]t is the purpose of the record, not the role of the agency, that is determinative," *Sinsheimer v. U.S. Dep't of Homeland Sec.*, 437 F. Supp. 2d 50, 55 (D.D.C. 2006), and an agency that "specializes in law enforcement . . . is entitled to deference" in "its decision to invoke exemption 7." *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998).

State has asserted Exemption 7 exclusively over records pertaining to DS, which "is the security and law enforcement arm of the U.S. Department of State." U.S. DEP'T OF STATE, THE MISSION OF THE BUREAU OF DIPLOMATIC SECURITY (Aug. 18, 2015), http://www.state.gov/m/ds/about/overview/246177.htm. With over 1,000 full-time law-enforcement officers with federal arrest authority and "authorized . . . to carry firearms while on duty," Office of Justice Programs, Federal Law Enforcement Officers, 2008, DEP'T OF JUSTICE 2, 10 (June 2012), the principal function of DS is law enforcement. Stein Decl. ¶ 37 DS exercises this authority pursuant to the delegation and redelegation of the security functions of the Secretary of State. *See* 66 Fed. Reg. 42 at 13111 (State Department Delegation of Authority 241); 22 U.S.C. § 4802(a) (enumerating the security functions of the Secretary of

State, including "protection of all United States Government personnel on official duty abroad," "establishment and operation of security functions at all Department of State facilities in the United States," "[d]evelopment and implementation of communications, computer, and information security," "[p]hysical protection of Department of State facilities, communications, and computer and information systems in the United States," and "[c]onduct of investigations relating to protection of foreign officials and diplomatic personnel and foreign missions in the United States"). Therefore, DS is entitled to the more deferential standard of review under Exemption 7 afforded law enforcement agencies. The records produced in response to this FOIA request over which information was withheld under Exemption 7 were compiled by DS for the purpose of enforcing government regulations on information security and to protect the Department from cybersecurity vulnerabilities. Stein Decl. ¶ 37.

1. <u>State properly invoked FOIA exemption 7(C)</u>

Exemption 7(C) is the law enforcement counterpart to Exemption 6 and protects the privacy interests of all persons mentioned in law enforcement records. Exemption 7(C) provides for the withholding of law enforcement records or information "to the extent that the production of such . . . information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Supreme Court has held that the protection afforded by Exemption 7(C) is broader than that provided by Exemption 6, although the scope of the two exemptions is similar. *Dep't. of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 756 (1989) ("[T]he standard for evaluate[on of] a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files."). Under this broad reach, courts routinely affirm the withholding of the identity and other personal

information of law enforcement officers, particularly where such information would not materially advance any public interest. *Banks v. Dep't of Justice*, 813 F. Supp. 2d 132, 144 (D.D.C. 2011) (quoting *Roth v. Dep't of Justice*, 642 F.3d 1161, 1174 (D.C. Cir. 2011)).

All of the withholdings under Exemption 7(C) have been asserted to protect the names and/or email information of employees named in DS records. Stein Decl. ¶¶ 37, 39-40. The Department has additionally asserted Exemption 6 over each of the Exemption 7(C) assertions. *See id*. ¶¶32, 35, 40; *see generally* Index. This includes DS personnel who were, and possibly are, in positions of access to information regarding official law enforcement investigations, and therefore could become targets of harassing inquiries for unauthorized access to investigations if their identities were released. *Id*. These individuals who work in law enforcement maintain substantial privacy interests in not having their identities disclosed and release of their names would shed no additional light on the conduct of governmental business. As a result, release of this information would constitute an unwarranted invasion of personal privacy and the information is exempt from disclosure under FOIA 7(C). *Id*. ¶ 40. For similar reasons, State also properly withheld the name of one INR employee named in DS' records. By virtue of their positions, an INR employee has access to intelligence material and the sensitivity of their work may subject them to harassment should their identities be revealed. *See* Index Doc Nos. C05891079, C05891070, C05838719, C005838720, C0591121, C0591119.

2. State Properly Invoked Exemption 7(E).

State has also withheld law enforcement information pursuant to Exemption 7(E). FOIA Exemption 7(E) states that an agency may safeguard "records or information" from disclosure if: (1) the "records or information" have been "compiled for law enforcement purposes;" and (2) the release of the "records or information . . . would disclose techniques and procedures for law

enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Congress intended that Exemption 7(E) protect from disclosure techniques and procedures used to prevent and protect against crimes, as well as techniques and procedures used to investigate crimes after they have been committed. *See, e.g.*, *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250–51 (D.C. Cir. 1993) (holding that portions of an FBI manual describing patterns of violations, investigative techniques, and sources of information available to investigators were protected by Exemption 7(E)). "[T]he exemption is written in broad and general terms" to avoid assisting lawbreakers. *Mayer Brown LLP v. IRS,* 562 F.3d 1190, 1193 (D.C. Cir. 2009). In interpreting the language of Exemption 7(E), this court has held that "even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness." *Judicial Watch, Inc. v. U.S. Dep't. of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004).

Here, State withheld portions of three (3) documents pursuant to exemption 7(E) after determining that release of this information might create a risk of circumvention of law. Stein Decl. ¶ 41. Specifically, State withheld a DS employee's secure phone number because if this number were released, individuals seeking to circumvent State's procedures for protecting classified information could more easily target this particular phone number for exploitation. *Id.* and Index Doc No. C05891089. State also withheld information that describes a specific technique used to secure information technology for Blackberries, as well as descriptions of potential security vulnerabilities, and the techniques State proposed using to mitigate potential vulnerabilities, relating to Blackberry technology employed at State. Stein Decl ¶ 41 and Index Doc Nos. C05891104, C05891096. This information if released would facilitate circumvention

of the law by providing a roadmap to the vulnerabilities and their mitigation. Stein Decl ¶41. In each instance where State withheld information, it was determined that release of the requested information would risk of circumvention of the law. *Id.*

**III. The State Department Has Released all Reasonably Segregable Information**.

Under FOIA, "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). In other words, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Central, Inc. v. Dep't of Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977). "Still, an agency is not obligated to segregate non-exempt material if 'the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value.'" *Competitive Enterprise Inst.*, 12 F. Supp. 3d at 123 (*quoting Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981)); *see also Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220–21 (D.D.C. 2005) (same). A court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. Dep't of Justice,* 518 F.3d 54, 61 (D.C. Cir. 2008) (internal citation omitted). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (citation omitted).

Here, consistent with this obligation, State conducted a line-by-line review for its segregability analysis, and has shown that it released all reasonably segregable material through the Declaration and index. Stein Decl. ¶ 43. As explained with regard to each document, State "carefully reviewed" each document and "determined that no further segregation of meaningful, information" could be made. *Id*; *see generally* Index. This meets the legal standard to demonstrate that all reasonably segregable information has been released. *See Johnson v. Exec. Office for U.S. Attorneys,* 310 F.3d 771, 776-77 (D.C. Cir. 2002) (holding that agency had

demonstrated there was no reasonably segregable non-deliberative material when it had submitted an affidavit by an agency official confirming that "a line-by-line review of each document withheld in full [had] determined that 'no documents contained releasable information which could be reasonably segregated from the nonreleasable portions.'").

## CONCLUSION

For all the foregoing reasons, this Court should grant summary judgment in favor of Defendant.

Dated: October 21, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/ Marsha Stelson Edney
MARSHA STELSON EDNEY(DC Bar #414271)
Senior Trial Counsel
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave N.W.
Washington DC 20530
Tel: (202) 514-4520
Fax: (202) 616-8470
Email: marsha.edney@usdoj.gov
*Attorneys for Defendant*