**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Civil Action No. 15-cv-646 (CKK) |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Judicial Watch, Inc., by counsel and pursuant to Federal Rule of Civil Procedure 56 and U.S. District Court for the District of Columbia Rule 7, respectfully cross-moves for summary judgment on Defendant's claims of exemption identified herein and Defendant's search. The grounds for Plaintiff's cross-motion are set forth in the accompanying Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion For Summary Judgment, Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute and Plaintiff's Statement of Undisputed Material Facts in Support of Cross-Motion for Summary Judgment, and the Declaration of Ramona R. Cotca (with exhibits). A proposed order is also being filed herewith.

Dated: January 13, 2017

Respectfully submitted,

JUDICIAL WATCH, INC.
/s/ *Ramona R. Cotca*
Ramona R. Cotca (D.C. Bar No. 501159)
Judicial Watch, Inc.
425 Third Street, SW, Suite 800
Washington, DC 20024
(202) 646-5172
rcotca@judicialwatch.org

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Civil Action No. 15-cv-646 (CKK) |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

FACTUAL AND PROCEDURAL BACKGROUND ..... 2

1. Plaintiff's FOIA Request ..... 2

2. FBI Investigation and Relevant Findings ..... 3

ARGUMENT ..... 5

1. Summary Judgment Standard ..... 5

2. The Deliberative Process Privilege Does Not Justify Defendant's Withholdings ..... 5

3. Plaintiff Requests a Supplemental Search of the Newly Recovered Records ..... 9

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**CASES** **PAGE**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .....5

*Competitive Enterprise Institute v. Office of Science and Technology*, Case No. 15-5128, slip op. at 9 (D.C. Cir. July 5, 2016) .....9

*Convertino v. U.S. Dep't of Justice*, 674 F. Supp. 2d 9 (D.D.C. 2009) .....7

*Department of the Air Force v. Rose,* 425 U.S. 352 (1976) .....6

*Hall & Assocs. v. U.S. Envtl. Prot. Agency*, 14 F. Supp. 1 (D.D.C. 2015) .....7

*In re Sealed Case*, 121 F.3d 728 (D.C. Cir. 1997) .....7

*Judicial Watch, Inc. v. U.S. Postal Service*, 297 F. Supp. 2d 252 (D.D.C. 2004) .....5

*Larson v. Dep't of State*, 565 F.3d 857 (D.C. Cir. 2009) .....9

*Meeropol v. Meese*, 790 F.2d 942 (D.C. Cir. 1986) .....9

*Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) .....6

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) .....9

*Texaco P.R., Inc. v. De't of Consumer Affairs*, 60 F. 3d 867 (1st Cir. 1995) .....1

*United States Dep't of Interior v. Klamath Waters Users Protective Ass'n.*, 532 U.S. 1 (2001) .....6, 7

*United States Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989) .....6

*United States Department of State v. Ray*, 502 U.S. 164 (1991) .....6

*Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476 (D.C. Cir. 1984) .....5, 9

**STATUTUES AND RULES**

5 U.S.C. § 552 .....1

5 U.S.C. § 552(b) .....1, 6

Fed. R. Civ. P. 56(c) .....5

By counsel, Plaintiff Judicial Watch, Inc. ("Judicial Watch") respectfully submits this memorandum in opposition to Defendant's motion for summary judgment and in support of Plaintiff's cross-motion for summary judgment. Plaintiff filed this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

**INTRODUCTION**

Plaintiff requests this Court to order the release of certain information Defendant has withheld under the deliberative process privilege because the "public's interest in honest, effective government" should prevail. *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995); 5 U.S.C. § 552(b)(5). The deliberative process privilege extended under Exemption 5 is not absolute and is routinely denied "where the documents sought may shed light on alleged government malfeasance." *Id*. Because the information Defendant is withholding is likely to shed light on government misconduct – the use of unauthorized electronic devices, such as iPads and BlackBerrys, for government business by former Secretary of State Hillary Clinton – Plaintiff submits that the deliberative process redactions contained in the 13 documents identified below are subject to the government misconduct exception and the information must be released. At a minimum, the Court should order an *in camera* review of the withheld information so that the Court may determine the appropriateness of the privilege. Plaintiff also respectfully requests that the Court order Defendant to undertake a supplemental search of the recently recovered records that are pertinent to former Secretary Clinton's unofficial email server.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Plaintiff's FOIA Request

News of Secretary Clinton's exclusive use of an unofficial, "clintonemail.com" email account, hosted on a server stored in her residence, for all of her official, State Department, email communications was made public by the *New York Times* on March 2, 2015. Pl. Statement of Undisputed Material of Facts in Support of Cross-Motion for Summary Judgment ("SMF"), ¶ 1. At a March 10, 2015 press conference, Secretary Clinton acknowledged using the unofficial email account for all of her work-related communications and asserted that she had returned "approximately 30,000 emails" – comprising "approximately 52,455 pages" of official government records – to the State Department on or about December 5, 2014. *Id.*, Def. Motion for Summary Judgment ("Def. SJM") (ECF No. 25) at p. 6.

Plaintiff is a tax-exempt, not-for-profit, educational organization that seeks to promote transparency, accountability and integrity in government and fidelity to the rule of law. Pl. SMF at ¶ 2, RRC Decl., ¶ 2. Following the *New York Times* report, Plaintiff initiated an investigation into the former secretary's email practice for her official, State Department, business. *Id.* As part of its investigation, Plaintiff submitted a number of FOIA requests to Defendant pertaining to the former Secretary's email communications, and on March 10, 2015, it submitted the following request seeking access to:

> A. Any and all records of requests by former Secretary of State Hillary Rodham Clinton or her staff to the State Department Office of Security Technology seeking approval for the use of an iPad or iPhone for official government business, and
>
> B. Any and all communications within or between the Office of the Secretary of State, the Executive Secretariat, and the Office of the Secretary and the Office of Security Technology concerning, regarding, or related to the use of unauthorized electronic devices for official government business between January 1, 2009 and January 31, 2013.

Complt. at ¶¶ 3, 5; RRC Decl. at ¶ 3. Plaintiff filed suit on April 28, 2015 after Defendant failed to satisfy its obligations under FOIA. Pl. SMF at ¶ 3.

2. **FBI Investigation and Relevant Findings**

On July 6, 2015, the U.S. Intelligence Community Inspector General (ICIG) submitted a referral to the Federal Bureau of Investigation (FBI) in accordance with Section 811(c) of the Intelligence Authorization Act of 1995 to initiate an investigation into "the potential unauthorized transmission and storage of classified information on the personal e-mail server of former Secretary of State Hillary Clinton." Pl. SMF at ¶¶ 4-5; RRC Decl., Ex. 1 (FBI Rpt.), pp. 1-2). On July 10, 2015, the FBI initiated a full investigation ("Clinton investigation") based upon the referral. *Id.* Almost one year later, on July 5, 2016, FBI Director James B. Comey publically spoke about the investigation and its findings. Pl. SMF at ¶ 6, RRC Decl., Ex. 2 ("Comey Stmt.").

The following undisputed facts were uncovered through the FBI's investigation and records produced by Defendant. Secretary Clinton used an unofficial email address and BlackBerry (connected to her clintonemail.com email server) for her official business during her tenure at the State Department. Pl. SMF at ¶ 7; RRC Decl., Ex. 1 (FBI Rpt.) at p. 8. The FBI discovered that Secretary Clinton used eight (8) unofficial (non-government issued) BlackBerry mobile devices and five (5) iPads during her tenure at the State Department. Pl. SMF at ¶ 8; RRC Decl., Ex. 1 (FBI Rpt.) at pp. 8-9. In response to a request by Secretary Clinton to use a secure Blackberry, similar to that being used by President Obama, Eric Boswell, Assistant Secretary of State for Diplomatic Security (DS), denied the request and advised of "vulnerabilities and risks associated with the use of BlackBerrys in the Mahogany Row" (7th floor of the State Department that houses the Secretary's office). Pl. SMF at ¶ 9; RRC Decl., Ex.

4 and Ex. 1 (FBI Rpt.) at pp. 12-13; *see also* Def. *Vaughn* index at p. 1 (ECF No. 25-1). In that same memo, he further stressed "that any unclassified Blackberry is highly vulnerable in any setting to remotely and covertly monitoring conversations, retrieving e-mails, and exploiting calendars." *Id*. Clinton's executive staff also inquired about the possibility of Secretary Clinton using an iPad to receive communications in her office; however, this request was also denied due to potential security compromises. Pl. SMF at ¶ 10; RRC Decl., Ex. 1 (FBI Rpt.) at p. 13. Despite the denied requests and warnings about security vulnerabilities, Secretary Clinton continued to primarily use her unofficial BlackBerry and iPad for her official, State Department, email communications throughout her four-year term. Pl. SMF at ¶ 11; RRC Decl., Ex. 1 (FBI Rpt.) at p. 13.[1]

While the FBI "did not find clear evidence that Secretary Clinton or her colleagues intended to violate laws governing the handling of classified information," the FBI found "evidence that they were extremely careless in their handling of very sensitive, highly classified information." Pl. SMF at ¶¶ 12-13; RRC Decl., Ex. 2. "There is evidence to support a conclusion that any reasonable person in Secretary Clinton's position, or in the position of those government employees with whom she was corresponding about these matters, should have known that an unclassified system was no place for that conversation." *Id.* "None of these e-mails should have been on any kind of unclassified system, but their presence is especially concerning because all of these e-mails were housed on unclassified personal servers not even supported by full-time security staff, like those found at Departments and Agencies of the U.S.

[1] *See* e.g. email from Philippe Reines (Deputy Assistant Secretary of State for Strategic Communications and Senior Communications Advisor to Secretary of State) to Secretary Clinton dated August 5, 2010, in which he writes, "In your iPad email you will find attached memo." RRC Decl., ¶ 7, Ex. 3 (Doc. No. C06133874), *also available* on State Department's FOIA Virtual Reading Room at https://foia.state.gov/Search/Results.aspx?collection=Clinton_Email (accessed Jan. 12, 2017). The attachments appear to be Foreign Press documents. *Id*.

Government – or even with a commercial service like Gmail." *Id.* The FBI determined that classified information was transmitted over emails sent or received by Secretary Clinton, and given a combination of factors, including the nature of Secretary Clinton's email practice, it is possible that hostile actors gained access to the former secretary's email account. Finally, the FBI "also developed evidence that the security culture of the State Department in general, and with respect to use of unclassified e-mail systems in particular, was generally lacking in the kind of care for classified information found elsewhere in the government." *Id.* While the FBI ultimately concluded not to recommend prosecution, misconduct pertaining to Secretary Clinton's use of the unauthorized devices cannot be disputed, whether or not it rises to the level of criminal prosecution.

## ARGUMENT

### 1. Summary Judgment Standard

In FOIA litigation, as in all litigation, summary judgment is appropriate only when the pleadings and declarations demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); Fed. R. Civ. P. 56(c). "In FOIA cases, agency decisions to withhold or disclose information under FOIA are reviewed *de novo*." *Judicial Watch, Inc. v. U.S. Postal Service*, 297 F. Supp. 2d 252, 256 (D.D.C. 2004). In reviewing a motion for summary judgment under FOIA, the court must view the facts "in the light most favorable to the [plaintiff]." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

### 2. The Deliberative Process Privilege Does Not Justify Defendant's Withholdings

Plaintiff challenges Defendant's withholdings of information in the following responsive records under the deliberative process privilege extended by FOIA's Exemption 5: Defendant

document numbers C05838711, C05838715, C05838716, C05838718, C05838724, C05838732, C05891089, C05891096, C05891104, C05891119, C05891125, C05891126 and C05891139. 5 U.S.C. § 552(b)(5); Def. SJM at pp. 13-15 (ECF No. 25); Def. *Vaughn* Index (25-1); RRC Decl. at ¶ 4.[2]

FOIA generally requires complete disclosure unless a record or information in a record falls into one of FOIA's nine, clearly delineated exemptions. 5 U.S.C. § 552(b); *see Department of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976). The exemptions are construed narrowly to promote FOIA's goal of full disclosure. *United States Department of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989). "[T]he strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *United States Department of State v. Ray*, 502 U.S. 164, 173 (1991) (citation omitted). Plaintiff challenges only the Exemption 5 withholdings, all of which are based on the deliberative process privilege under FOIA.

The deliberative process privilege is properly invoked only when the withheld record or information would reveal "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which government decisions and policies are formulated." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal quotation and citation omitted). The privilege has traditionally been extended to provide reasonable security to the decision- making process within a government agency. *Id.* The privilege is intended "to enhance the quality of agency decisions by protecting open and frank discussions among those who make them within the Government." *United States Dep't of*

[2] Defendant withheld material from some of these documents pursuant to FOIA's Exemptions 1, 3, 6 and 7. Plaintiff does not challenge the withholding of material subject to those exemptions.

*Interior v. Klamath Waters Users Protective Ass'n.*, 532 U.S. 1, 9 (2001) (internal quotation marks and citations omitted).

The deliberative process privilege, however, can be overcome by the government misconduct exception to the privilege "[w]here there is reason to believe the documents sought may shed light on government misconduct … on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997); *Hall & Assocs. v. U.S. Envtl. Prot. Agency*, 14 F. Supp. 3d 1, 9 (D.D.C. 2015); *Convertino v. U.S. Dep't of Justice,* 674 F. Supp. 2d 9, 104 (D.D.C. 2009).

The government misconduct exception to the deliberative process privilege clearly applies in this case, albeit it is generally narrowly construed. The record is undisputed that Secretary Clinton was advised about the security vulnerabilities associated with use of unsecure BlackBerry and iPad mobile devices for official, State Department business, but she continued to use them regardless of the warnings.

There is also a clear nexus between the government misconduct and the records at issue. Simply by virtue of the subject matter discussed in the records – the use of mobile devices for Secretary Clinton's official, State Department, email communications during her tenure at the State Department – a connection exists and the exception to the privilege should apply. The misconduct consisted of use of unsecure and unauthorized mobile devices by Secretary Clinton for her email communications as the Secretary of State. The withheld information in the relevant records concern internal discussions and deliberations about Secretary Clinton's requests and inquiries into the use of such devices for her official, State Department business.

Further, a review of the nonredacted portions of these documents shows that release of the withheld portion is required under the law. On February 2, 2009, Assistant Secretary of State Eric Boswell emailed DS Official Donald Reid, "On the off chance that S staff continues to push for S or TS-capable PDAs,…I'll need a briefing on what we know…Pls schedule." Pl. SMF at ¶ 14; RRC Decl., Ex. 5 (Doc. No. C05838711). The ellipsis is a place holder for text Defendant redacted and the "S" refers to Secretary Clinton. *Id.* In another email dated March 11, 2009, in which the Blackberries Memo was referenced, one official relays his or her discussion with Mills on the subject. Pl. SMF at ¶ 15; RRC Decl., Ex. 6 (Doc. No. C05838724). The paragraph is mostly all redacted but it concludes with a note that Secretary Clinton expressed that she understood the [security] concerns raised in the memo. *Id.* The discussions continued at least midway through Secretary Clinton's term. "I wanted to share with you, back-channel, a little insight into the current thinking in the Secretary's inner circle on technology issues and request your help." Pl. SMF at ¶ 16; RRC Decl., Ex. 7 (C05838732 and C05891089). The email communication is dated February 9, 2011, and was sent to DS Officials Gentry Smith and Donald Reid. Again, Defendant heavily redacted the text under Exemption 5's deliberative process privilege. *Id*. Donald Reid responded, "Certainly, we need to verify or correct the urban myths Cheryl [Mills] believes re other agencies." *Id.*

Accordingly, the available text in the responsive records demonstrates there is a clear connection between the withheld material Plaintiff seeks access to and the Secretary's use of unsecure and unauthorized mobile devices for her official, State Department business. More plainly stated, the deliberations withheld surrounding the inquiries into possible use of BlackBerry, iPad, and perhaps other devices, by Secretary Clinton do not merit the protection normally afforded to the decision-making process in this case.

### 3. Plaintiff Requests a Supplemental Search of the Newly Recovered Records

While Plaintiff does not wish to duplicate efforts being undertaken in other litigations concerning the adequacy of the State Department's search in response to FOIA requests that implicate Secretary Clinton's emails, Plaintiff objects to the Defendant's refusal to search the records that were recently uncovered by the FBI. *Weisberg*, 705 F.2d at 1350-51. The adequacy of an agency's search for responsive records "is measured by the reasonableness of the effort in light of the specific request." *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009) (*quoting Meeropol v. Meese*, 790 F.2d 942 (D.C. Cir. 1986)). The search for records need not be exhaustive, *see Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), but the scope and methodology of the search must be "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351.

The State Department claims that its search of the records that were initially recovered and transferred from the FBI to the State Department on August 5, 2016 was "voluntary." Pl. SMF at ¶¶ 18-19; Def. SJM at p. 5, Stein Decl. II at ¶ 3. Obviously, Plaintiff disputes this claim. As was recently held, the purpose of FOIA is hardly served "[i]f a department head can deprive the citizens of their right to know what his department is up to by the simple expedient of maintaining his departmental emails on an account in another domain." *Competitive Enterprise Institute v. Office of Science and Technology*, Case No. 15-5128, slip op. at 9 (D.C. Cir. July 5, 2016).

Since Director Comey's announcement of the recovery of thousands of emails on July 5, 2016, it was released on October 28, 2016 that the FBI had recovered another trove of emails "pertinent to the investigation of former Secretary Clinton's personal email server." Pl. SMF at ¶¶ 20-21; RRC Decl., Ex. 8. On November 6, 2016, Director Comey announced the FBI had

completed its review of this additional set of records, including "all of the communications that were to or from Hillary Clinton while she was Secretary of State." *Id.* Since then, the State Department confirmed that the FBI advised it was transferring relevant records to the State Department. *Id.*; RRC Decl., Ex. 9. Plaintiff therefore, respectfully requests that the Court also order the State Department to search the newly-discovered records being returned to the State Department by the FBI in response to Plaintiff's FOIA request.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's cross-motion should be granted and Defendant's motion for summary judgment should be denied. The Court should order the release of the deliberative process withholdings in the 13 documents identified herein and order a supplemental search of the newly-recovered records by the FBI that pertain to the clintonemail.com email server.

Dated: January 13, 2017

Respectfully submitted,

JUDICIAL WATCH, INC.

/S/ *Ramona R. Cotca*

Ramona R. Cotca (D.C. Bar No. 501159)
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
(202) 646-5172
rcotca@judicialwatch.org

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Civil Action No. 15-cv-646 (CKK) |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| | ) | |
| *Defendant*. | ) | |
| ______________________________ | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE AND PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Judicial Watch, Inc., by counsel and pursuant to LCvR 7(h)(1), respectfully submits this response to Defendant's statement of material facts not in dispute and Plaintiff's statement of undisputed material facts in support of cross-motion for summary judgment:

**I. Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute.**

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Undisputed.

5. Undisputed.

6. Undisputed.

7. Undisputed.

8. Undisputed.

9. Undisputed.

10. Undisputed.

11. Plaintiff is unable to state whether it disputes or does not dispute the facts asserted by Defendant in this paragraph because Defendant's factual assertions concern the internal operations of Defendant or are otherwise uniquely known to Defendant. *See, e.g.*, *Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145-46 (D.C. Cir. 2006) (noting that the "asymmetrical distribution of knowledge" between the agency and the requestor in FOIA litigation "distorts the traditional adversary nature of our legal system's form of dispute resolution.").

12. Plaintiff is unable to state whether it disputes or does not dispute the facts asserted by Defendant in this paragraph because Defendant's factual assertions concern the internal operations of Defendant or are otherwise uniquely known to Defendant. *See, e.g.*, *Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145-46 (D.C. Cir. 2006) (noting that the "asymmetrical distribution of knowledge" between the agency and the requestor in FOIA litigation "distorts the traditional adversary nature of our legal system's form of dispute resolution.").

13. Plaintiff disputes that the search was "voluntary." Plaintiff further disputes Defendant's assertion that the records were not in State's possession and control at the time the FOIA request was made, as the assertion is a legal conclusion, not an issue of fact. *See Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1004-06 (D.D. Cir. 2009); *Ryan v. U.S. Dep't of Justice*, 617 F.2d 781, 785 (D.C. Cir. 1980) ("A simple possession standard would permit agencies to insulate their activities from FOIA disclosure by farming out operations to outside contractors."); *Forsham v. Califano*, 587 F.2d 1128, 1136 n. 19 (D.C. Cir. 1978) ("We do not suggest that mere physical possession of records by a government agency is the sole criterion for determining whether they fall within the scope of FOIA. Obviously a government agency cannot

circumvent FOIA by transferring physical possession of its records to a warehouse or like bailee."), *aff'd*, *Fosham v. Harris*, 445 U.S. 169 (1980); *see also Federal Trade Commission v. Capital City Mortgage Corp*., 321 F. Supp. 2d 16, 19 (D.D.C. 2004) (applying constructive trust doctrine). Plaintiff does not dispute that Defendant searched the records referenced therein.

14. Plaintiff objects to Paragraph 14 because it is a legal conclusion, not an issue of fact.

15. Plaintiff is unable to state whether it disputes or does not dispute the facts asserted by Defendant in this paragraph because Defendant's factual assertions concern the internal operations of Defendant or are otherwise uniquely known to Defendant. *See, e.g., Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145-46 (D.C. Cir. 2006) (noting that the "asymmetrical distribution of knowledge" between the agency and the requestor in FOIA litigation "distorts the traditional adversary nature of our legal system's form of dispute resolution.").

16. Plaintiff is unable to state whether it disputes or does not dispute the facts asserted by Defendant in this paragraph because Defendant's factual assertions concern the internal operations of Defendant or are otherwise uniquely known to Defendant. *See, e.g., Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145-46 (D.C. Cir. 2006) (noting that the "asymmetrical distribution of knowledge" between the agency and the requestor in FOIA litigation "distorts the traditional adversary nature of our legal system's form of dispute resolution.").

17. Plaintiff is unable to state whether it disputes or does not dispute the facts asserted by Defendant in this paragraph because Defendant's factual assertions concern the internal operations of Defendant or are otherwise uniquely known to Defendant. *See, e.g., Judicial*

*Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145-46 (D.C. Cir. 2006) (noting that the "asymmetrical distribution of knowledge" between the agency and the requestor in FOIA litigation "distorts the traditional adversary nature of our legal system's form of dispute resolution.").

18. Plaintiff is unable to state whether it disputes or does not dispute the facts asserted by Defendant in this paragraph because Defendant's factual assertions concern the internal operations of Defendant or are otherwise uniquely known to Defendant. *See, e.g., Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145-46 (D.C. Cir. 2006) (noting that the "asymmetrical distribution of knowledge" between the agency and the requestor in FOIA litigation "distorts the traditional adversary nature of our legal system's form of dispute resolution.").

19. Plaintiff is unable to state whether it disputes or does not dispute the facts asserted by Defendant in this paragraph because Defendant's factual assertions concern the internal operations of Defendant or are otherwise uniquely known to Defendant. *See, e.g., Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145-46 (D.C. Cir. 2006) (noting that the "asymmetrical distribution of knowledge" between the agency and the requestor in FOIA litigation "distorts the traditional adversary nature of our legal system's form of dispute resolution.").

20. Plaintiff is unable to state whether it disputes or does not dispute the facts asserted by Defendant in this paragraph because Defendant's factual assertions concern the internal operations of Defendant or are otherwise uniquely known to Defendant. *See, e.g., Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145-46 (D.C. Cir. 2006) (noting that the "asymmetrical distribution of knowledge" between the agency and the requestor in FOIA

litigation "distorts the traditional adversary nature of our legal system's form of dispute resolution.").

21. Plaintiff disputes the number of records Defendant identifies it located as responsive to Plaintiff's FOIA request. By Plaintiff's count, the facts asserted in Paragraphs 3 through 8 in Defendant's statement of undisputed material facts convey that Defendant located 50 documents responsive to Plaintiff's FOIA request prior to the July 2016 search.

22. Plaintiff does not dispute that Defendant withheld information on the basis that it claims the information is subject to FOIA Exemptions 5, 6, and 7. Plaintiff specifically disputes the withholding of information subject to FOIA Exemption 5. To the extent Defendant implies that it withheld information subject to only those FOIA exemptions, the assertion is disputed. Defendant withheld responsive information under FOIA Exemptions 1 and 3 also, although Plaintiff does not dispute those withholdings.

23. Plaintiff objects to Defendant's assertions made in Paragraph 23 of its statement because it is a legal conclusion, not an issue of fact. To the extent a response is deemed necessary, the assertions are disputed.

24. Plaintiff objects to Defendant's assertions made in Paragraph 24 to the extent they call for a legal conclusion, not an issue of fact. Plaintiff does not dispute that Defendant withheld information on the claim that it is subject to FOIA Exemptions 6 and 7. Plaintiff also does not contest the withholding of information in this case subject to those exemptions.

25. Undisputed.

26. Plaintiff objects to Defendant's assertions made in Paragraph 26 of its statement to the extent they call for a legal conclusion, not an issue of fact. Plaintiff does not dispute that

Defendant withheld information subject to FOIA Exemption 7(E). Plaintiff also does not contest the withholding of information in this case subject to that exemption.

27. Plaintiff is unable to state whether it disputes or does not dispute the facts asserted by Defendant in this paragraph because Defendant's factual assertions concern the internal operations of Defendant or are otherwise uniquely known to Defendant. *See, e.g., Judicial Watch, Inc.*, 449 F.3d at 145-146. To the extent a response is deemed necessary, the assertions are disputed.

## II. Plaintiff's Statement of Undisputed Material Facts in Support of Cross-Motion for Summary Judgment.

1. On March 2, 2015, the *New York Times* reported for the first time that Secretary Clinton exclusively used an unofficial email account, hosted on a "clintonemail.com" server, for all of her official email communications during her entire, four-year tenure at the State Department. *See* Michael S. Schmidt, "*Hillary Clinton Used Personal Email Account at State Dept., Possibly Breaking Rules*," NEW YORK TIMES, March 2, 2015, available at http://www.nytimes.com/2015/03/03/us/politics/hillary-clintons-use-of-private-email-at-state-department-raises-flags.html. [1]

2. Plaintiff, a tax-exempt, not-for-profit educational organization that seeks to promote transparency, integrity, and accountability in government and fidelity to the rule of law, initiated an investigation into Secretary Clinton's email practice for her official, State Department, business. Decl. of Ramona R. Cotca ("RRC Decl.") at ¶¶ 2-3. As part of its investigation, Plaintiff submitted numerous FOIA requests to the State Department pertaining to

[1] Plaintiff respectfully requests that the Court take judicial notice of the publication of the article, which was published by the NEW YORK TIMES, and published on the website provided above. As a result, the comments "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

email practices of Secretary Clinton and/or other executive officials at the Department of State during Secretary Clinton's term. Decl. of Ramona R. Cotca ("RRC Decl.") at ¶¶ 2-3. On March 10, 2015, Plaintiff submitted the following request seeking access to:

> A. Any and all records of requests by former Secretary of State Hillary Rodham Clinton or her staff to the State Department Office of Security Technology seeking approval for the use of an iPad or iPhone for official government business, and
>
> B. Any and all communications within or between the Office of the Secretary of State, the Executive Secretariat, and the Office of the Secretary and the Office of Security Technology concerning, regarding, or related to the use of unauthorized electronic devices for official government business between January 1, 2009 and January 31, 2013.

3. When the State Department failed to issue a determination on the request within the time period required by law, Plaintiff filed suit on April 28, 2015. Compl. (ECF No. 1) at ¶¶ 5-10; Answer (ECF No. 6) at ¶¶ 5-10. Defendant filed its answer on June 3, 2015. Answer (ECF No. 6).

4. Subsequent to Plaintiff's FOIA request, on July 6, 2015, the U.S. Intelligence Community Inspector General (ICIG) submitted a referral to the Federal Bureau of Investigation (FBI) in accordance with Section 811(c) of the Intelligence Authorization Act of 1995 to initiate an investigation into "the potential unauthorized transmission and storage of classified information on the personal e-mail server of former Secretary of State Hillary Clinton." *See* RRC Decl., ¶ 5, Ex. 1 (FBI Report on the "Clinton E-Mail Investigation, July 2016) at pp. 1-2, also available online at https://vault.fbi.gov/hillary-r.-clinton/hillary-r.-clinton-part-01-of-05/view (accessed Jan. 12, 2017). [2]

---

[2] Plaintiff respectfully requests that the Court take judicial notice of the representations made in the FBI report, which was released in redacted form by the FBI on the website provided above and attached as Exhibit 1 to the RRC Declaration. As a result, the statements "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

5. The FBI initiated a full investigation on July 5, 2016, based upon the ICIG referral. *Id.*

6. On July 5, 2016, FBI Director James B. Comey made a public statement about the investigation and its findings. *See* RRC Decl., ¶ 6, Ex. 2 ("*Statement by FBI Director James B. Comey on the Investigation of Secretary Hillary Clinton's Use of a Personal E-Mail System*," Remarks prepared for delivery at press briefing, published on July 5, 2016, and available on the FBI's government website at https://www.fbi.gov/news/pressrel/press-releases/statement-by-fbi-director-james-b-comey-on-the-investigation-of-secretary-hillary-clinton2019s-use-of-a-personal-e-mail-system (accessed on Jan. 12, 2017).[3]

7. During its investigation, Secretary Clinton stated she used a personal email address and BlackBerry for her official business during her tenure at the State Department. *See* RRC Decl., Ex. 1 (FBI Rpt.) at p. 8; *see* e.g. RRC Decl., ¶ 7, Ex. 3 (Email from Philippe Reines to H (Secretary Clinton), Aug. 5, 2010, with Subject "Memo," in which he writes, In your iPad email you will find attached memo.") (Doc. No. C06133874).

8. The FBI discovered that Secretary Clinton used eight (8) e-mail capable BlackBerry and five (5) iPad devices during her tenure at the State Department. RRC Decl., Ex. 1 (FBI Rpt.) at pp. 8-9.

9. In an information memo for Cheryl D. Mills with the subject line: "Use of Blackberries in Mahogany Row," Eric J. Boswell advised of "vulnerabilities and risks associated

---

[3] Plaintiff respectfully requests that the Court take judicial notice of the public remarks made by FBI Director Comey, and contained in the press release available on the website provided above and attached as Exhibit 2 to RRC Declaration. As a result, the statements "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

with the use of BlackBerrys in the Mahogany Row," and further wrote: "I cannot stress too strongly, however, that any unclassified Blackberry is highly vulnerable in any setting to remotely and covertly monitoring conversations, retrieving e-mails, and exploiting calendars." A copy of the memo was produced in redacted form by Defendant in response to Plaintiff's FOIA request at issue in this lawsuit ("Blackberries Memo"). RRC Decl. at ¶ 8, Ex. 4.

10. The FBI's report also reflects that Clinton's executive staff inquired about the possibility of Secretary Clinton using an iPad to receive communications in her office. However, this request was also denied due to restrictions associated with the Secretary's office being in a SCIF. RRC Decl., Ex. 1 (FBI Rpt.) at p. 13.

11. According to the FBI report, Secretary Clinton and Huma Abedin (Deputy Chief of staff) confirmed that Secretary Clinton primarily used her BlackBerry or iPad for checking emails. RRC Decl., Ex. 1 (FBI Rpt.) at p. 13.

12. As set out in Director Comey's public statement, while the FBI "did not find clear evidence that Secretary Clinton or her colleagues intended to violate laws governing the handling of classified information," the FBI found "evidence that they [Secretary Clinton and those she was corresponding with] were extremely careless in their handling of very sensitive, highly classified information." RRC Decl., Ex. 2. "There is evidence to support a conclusion that any reasonable person in Secretary Clinton's position, or in the position of those government employees with whom she was corresponding about these matters, should have known that an unclassified system was no place for that conversation." *Id.* "None of these e-mails should have been on any kind of unclassified system, but their presence is especially concerning because all of these e-mails were housed on unclassified personal servers not even supported by full-time

security staff, like those found at Departments and Agencies of the U.S. Government – or even with a commercial service like Gmail." *Id.*

13. The FBI determined that classified information was transmitted over emails sent or received by Secretary Clinton, and, given a combination of factors, including the nature of Secretary Clinton's email practices, it is possible that hostile actors gained access to the former secretary's email account. RRC Decl., Ex. 2. Finally, the FBI "also developed evidence that the security culture of the State Department in general, and with respect to use of unclassified e-mail systems in particular, was generally lacking in the kind of care for classified information found elsewhere in the government." *Id*.

14. On February 2, 2009, Assistant Secretary of State Eric Boswell wrote to DS Official Donald Reid, "On the off chance that S staff continues to push for S or TS-capable PDAs,…I'll need a briefing on what we know…Pls schedule." RRC Decl. at ¶ 9, Ex. 5 (Doc. No. C05838711).

15. A March 11, 2009 email that discussed the BlackBerry Memo conveys that Secretary Clinton expressed that she understood the issues after reading the memo. RRC Decl. at ¶ 10, Ex. 6 (Doc. No. C05838724).

16. On February 9, 2011, one official wrote DS Officials Gentry Smith and Donald Reid, "I wanted to share with you, back-channel, a little insight into the current thinking in the Secretary's inner circle on technology issues and request your help." RRC Decl. at ¶ 11, Ex. 7 (Doc Nos. C05838732 and C05891089). Defendant withheld the remaining text in the paragraph under Exemption 5. Donald Reid responded, in part, "Certainly, we need to verify or correct the urban myths Cheryl [Mills] believes re other agencies." *Id.*

17. On Dec. 5, 2014, Secretary Clinton provided "approximately 30,000 emails" – comprising "approximately 52,455 pages" of official government records – to the State Department in response to a request by the department that, if she was aware or were to become aware of "a federal record, such as an email sent or received on a personal email account while serving as Secretary of State . . . a copy of this record be made available to the Department." Stein Decl. 1 (ECF No. 425-1) at ¶ 19, n. 8.

18. At the conclusion of its investigation in or about July 2016, Director Comey announced that the FBI "also discovered several thousand work-related e-mails that were not in the group of 30,000 that were returned by Secretary Clinton to State in 2014." RRC Decl., Ex. 2.

19. These several thousand work-related emails were searched by Defendant in response to Plaintiff's FOIA request. *See* Stein Decl. 2 (ECF No. 25-2) at ¶ 3.

20. On October 28, 2016, Director Comey informed members of the U.S. Congress by letter that the "FBI has learned of the existence of emails that appear to be pertinent to the investigation [of former Secretary Clinton's personal email server]." RRC Decl., ¶ 12, Ex. 8; *also available* at http://www.nytimes.com/interactive/2016/10/28/us/politics/fbi-letter.html?_r=0 (accessed Jan. 12, 2017). On November 6, 2016 Director Comey informed members of the U.S. Congress by letter that the FBI "reviewed all of the communications that were to or from Hillary Clinton while she was Secretary of State." RRC Decl., ¶ 12, Ex. 8; *also available* at http://www.nytimes.com/interactive/2016/11/06/us/politics/fbi-letter-emails.html (accessed Jan. 12, 2017).[4]

[4] Plaintiff respectfully requests that the Court take judicial notice of the representations made by Director Comey in the October 28, 2016 and November 6, 2016 letters, which are attached to the aforementioned exhibit and available on the websites provided. The comments "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

21. Counsel on behalf of the State Department informed the Court in an unrelated FOIA lawsuit, captioned *Judicial Watch, Inc. v. U.S. Dep't of State* (Case No. 15-687) (D.D.C.) (JEB), in which the records referenced in paragraph 20 above were discussed, that the FBI "confirmed that they will be sending something to State….[t]hese are e-mail chains in which former Secretary Clinton was either a recipient or sender." RRC Decl., ¶ 13, Ex. 9, p. 3, lines 4-12.

Dated: January 13, 2017

Respectfully submitted,

JUDICIAL WATCH, INC.

/s/ *Ramona R. Cotca*
Ramona R. Cotca (D.C. Bar No. 501159)
Judicial Watch, Inc.
425 Third Street, SW, Suite 800
Washington, DC 20024
(202) 646-5172
rcotca@judicialwatch.org

*Counsel for Plaintiff*